IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TEDI THOMAS WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:10cv34-WHA-SRW |
| | ) | (WO) |
| GWINETT WILLIAMS, EVA LOVE, | ) | |
| DEPUTY LYNN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the court on the Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #23) filed by Defendants Gwinett Williams, Eva Love, and "Deputy Lynn" (collectively "Defendants") on April 1, 2010.[1]

Plaintiff Tedi Williams ("Plaintiff") alleges in her Second Amended Complaint that Defendants, in their individual capacities, violated the Fourteenth Amendment to the United States Constitution by holding her in confinement after a state court judge dismissed her criminal charges. (Doc. #22.) Pursuant to this court's Memorandum Opinion and Order (Doc. #21), Plaintiff's earlier Amended Complaint was dismissed for failure to adequately allege that Defendants acted with deliberate indifference to her due process rights. The court did, however, provide Plaintiff leave to refile her Fourteenth Amendment claims, so as to have another opportunity to adequately allege these claims. Plaintiff then filed her Second Amended Complaint, and Defendants filed the present motion to dismiss Plaintiff's claims. For reasons to

---

[1] Plaintiff does not assert any claims against an earlier Defendant, Richard Moss, in the Second Amended Complaint. He is no longer a Defendant.

be discussed, the Motion to Dismiss Plaintiff's Second Amended Complaint is due to be GRANTED.

## II.  MOTION TO DISMISS STANDARD

The court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).   In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.   *See Ashcroft v. Iqbal,* _ U.S. _,  129 S.Ct. 1937, 1949-50 (2009).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *Id*.  (citation omitted).   To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.   The factual allegations  "must be enough to raise a right to relief above the speculative level."  *Id*. at 555.

The Eleventh Circuit, moreover, "imposes a heightened pleading requirement in section 1983 claims against individuals, and plaintiffs cannot rely on 'vague or conclusory' allegations." *Epps v. Watson*, 492 F.3d 1240, 1242 (11th Cir. 2007); *see also GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly

established right.").² In such cases, the complaint must allege the relevant facts "with sufficient specificity." *Fullman v. Graddick*, 739 F.2d 553, 560 (11th Cir. 1984).

### III. FACTS

The allegations of Plaintiff's Second Amended Complaint are as follows:

Plaintiff was arrested on September 30, 2007 on an outstanding warrant for possession of a controlled substance in Enterprise, Alabama. Upon arrest, Plaintiff informed the police that she had already been arrested on that warrant and the case had been dismissed. Plaintiff was taken to the Coffee County jail and locked up.

While incarcerated, Plaintiff came to personally know Officer Gwinett Williams ("Williams"), Deputy Lynn ("Lynn"), and Sgt. Eva Love ("Love"), who are all defendants in this lawsuit. Plaintiff saw two of the jailers, Williams and Lynn, every time they were on duty from the start of her incarceration on September 30, 2007 to the date of her release on January 22, 2008. Every day, Plaintiff told either Williams or Lynn that the charge forming the basis of her arrest and confinement was previously dismissed.

On December 11, 2007, a state court judge issued a written *nolle prosequi* order that entitled Plaintiff to be released from jail, although Plaintiff does not allege that anyone at the jail received this order or any other court document showing Plaintiff was entitled to be released. Plaintiff was held in jail until January 22, 2008, over five weeks after the state court judge issued

---

² In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court ruled that heightened pleading was not to be applied in civil rights cases against municipalities, because municipalities were not entitled to immunity. The Supreme Court did not, however, address the propriety of the application of heightened pleading in civil rights cases under 42 U.S.C. § 1983 when the defendant is not a municipality. Post-*Leatherman*, the Eleventh Circuit has continued to apply a heightened pleading standard for section 1983 claims against individuals. *See Epps*, 492 F.3d at 1242 & n.2.

the order, when her attorney informed the jail that she should have been released on December 11, 2007.  When Plaintiff was released, Richard Moss, a jail employee, told her that a mistake had been made and she should have been released on December 11, 2008, the day the state court judge issued the *nolle prosequi* order.

Plaintiff alleges that Defendants unlawfully detained her in violation of the Fourteenth Amendment.  As for Williams and Lynn, Plaintiff alleges that they were deliberately indifferent to her complaints, made both before and after December 11, 2007, that she was being unlawfully jailed, because both individuals made no effort at all to ascertain the validity of the complaints.  Plaintiff stresses that "her complaints made after December 11, 2007, were sufficient to create a duty for [Williams and Lynn] to investigate the truth of her complaint because by then her case had been officially dismissed on the record and easily ascertainable."  (Doc. #22, Second Am. Compl. ¶ 21.)  Plaintiff claims that Williams and Lynn "refused to do anything about her complaint," and therefore "were deliberately indifferent to her being falsely imprisoned."  (Id. at ¶ 22.)

As for Defendant Love, Plaintiff alleges that Love performed supervisory duties at the jail, which included the handling of paperwork regarding the release of prisoners.  Plaintiff told Love "on September 30, 2007, and several times after that, up to January 22, 2008, that she wasn't supposed to be there."  (Id. at ¶ 26.)  In particular, Plaintiff wrote 9 to 10 written complaints to Love indicating that she should not be in jail.  Plaintiff signed and dated these complaints, and placed them in a box by the cell door so that correctional officers could deliver them to Love, both before and after December 11, 2007.

### IV.  DISCUSSION

4

Defendants argue that qualified immunity requires the dismissal of Plaintiff's Fourteenth Amendment claim.

Qualified immunity "insulates government officials from personal liability for money damages for actions taken in good faith pursuant to their discretionary authority." *Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir. 1990) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotation marks omitted). The basic premise of the doctrine is for immunity to harbor government officials from liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

To determine whether a government agent is eligible for qualified immunity, a three-part analysis, guided by Eleventh Circuit and Supreme Court precedent, is appropriate. *See Vinyard v. Wilson*, 311 F.3d 1340, 1346-47 (11th Cir. 2002). First, the government official must show that he was engaged in a "discretionary function" when he committed the allegedly unlawful acts. *Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). If the official satisfies the discretionary function threshold, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194 (citation omitted). The plaintiff must satisfy the two-prong test prescribed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001); she must show: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the violation. 533 U.S. at 201. A right is "clearly established"

if "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202. The Supreme Court has recently recognized that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

A. **Discretionary Authority**

Despite the court's previous rejection of the exact same argument (Doc. #21 at 5-6), Plaintiff apparently continues to argue that Defendants are not entitled to qualified immunity because they were not acting within their discretionary authority when they committed the allegedly unlawful acts. Plaintiff's argument is unavailing.

When conducting the discretionary authority analysis, "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Rather, the essence of the inquiry is whether the "act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* Here, the inquiry is not whether the Defendants had the discretionary authority to illegally detain Plaintiff, but rather whether holding and releasing prisoners is reasonably related to the discretionary authority of jail administrators and jailers. Holding and releasing prisoners is within the scope of the discretionary authority of jail administrators and jailers. Accordingly, the court concludes that the Defendants' act of detaining Plaintiff was within their discretionary authority.

B. **Violation of a Constitutional Right**

Plaintiff claims that her over-detention resulted in a violation of her Fourteenth Amendment due process right to be free from continued detention after the state should have known that she was entitled to release. To establish this violation, Plaintiff must show that Defendants acted with deliberate indifference to her due process rights. *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (citing *Cannon v. Macon County*, 1 F.3d 1558, 1563 (11th Cir. 1993)). Deliberate indifference is more than mere human error; Plaintiff must show that Defendants had "(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than mere negligence." *Tillman*, 496 F.3d at 1327 (internal quotation marks and citation omitted) (alteration in original). The deliberate indifference standard is "a difficult burden for a plaintiff to meet." *Id.* (citing *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990)).

Defendants argue the Second Amended Complaint should be dismissed because it fails to allege they were subjectively aware of Plaintiff's entitlement to release. Defendants point out that the Second Amended Complaint does not allege that a release order was ever written or that the Defendants were given a copy of the state court's *nolle prosequi* order prior to Plaintiff's release on January 22, 2008. Plaintiff simply alleges that her attorney informed the jail on January 22, 2008 that she should have been released on December 11, 2007, and the jail released her immediately after receiving this information. (Doc. #22, Second Am. Compl. ¶ 14.)

In Plaintiff's eleven-sentence response brief, she continues to maintain that she cannot allege any more facts indicating Defendants' deliberate indifference because such facts are unknown to her. Consequently, Plaintiff relies on the following allegations to show Defendants' subjective knowledge of her over-detention: (1) From the date of her incarceration on

7

September 30, 2007 to the date of her release on January 22, 2008, Plaintiff complained every day to either Williams or Lynn that she should be released because the charges forming the basis of her incarceration were previously dismissed.  (Id. ¶ 9-10, 15.)  Plaintiff emphasizes that "her complaints made after December 11, 2007, were sufficient to create a duty for [Lynn and Williams] to investigate the truth of her complaint because by then her case had been officially dismissed on the record and easily ascertainable." (Id. at ¶ 21.)  (2)  Plaintiff told Love "on September 30, 2007, and several times after that, up to January 22, 2008, that she wasn't supposed to be there."  (Id. at ¶ 26.)  (3)  Plaintiff wrote 9 to 10 written complaints that presumably were delivered to Love;  Plaintiff signed and dated the complaints and placed them in a box by her jail cell designated for prisoner complaints.  (Id. at ¶ 28.)  Other than these facts, Plaintiff forthrightly admits that she "has no more to plead."  (Doc. #26 at 1.)

The disposition of this motion to dismiss, like the previous motion, is guided by the Eleventh Circuit's decision in *West v. Tillman*, 496 F.3d 1321 (11th Cir. 2007).  In that case, two pretrial detainees remained incarcerated for 23 days and 58 days respectively following court orders to release them.  *Id.* at 1325-26.  The source of the delay was the jail staff's failure to properly enter the release orders into the jail's computer system and to properly deliver "jail cards" to the docket department to accomplish the release.  *Id.*  One of the plaintiff prisoners complained in writing to a defendant prison worker about his alleged over-detention in the prison, although he did not offer specific details of the communications or copies of the complaints.  *Id.* at 1328.  The Eleventh Circuit affirmed summary judgment in favor of defendant county jail employees on the basis of qualified immunity because they were not deliberately indifferent to plaintiff prisoners' due process right to timely release, and thus did not violate the

Fourteenth Amendment. In particular, the Eleventh Circuit held that the Defendants, by failing to process the release information and failing to follow up on the plaintiff prisoner's complaints, were at most negligent in failing to carry out their responsibilities. *Id.* at 1327-28.

*Tillman* thus instructs that merely receiving a plaintiff prisoner's release order and erroneously processing that order is insufficient to state a Fourteenth Amendment over-detention claim, even if the plaintiff makes general protests of the over-detention to the defendants. In light of *Tillman*, the court agrees with the Defendants that the current allegations of the Second Amended Complaint fail to allege Defendants acted with deliberate indifference, and thus fail to state a Fourteenth Amendment claim. The Second Amended Complaint does not allege the Defendants received the *nolle prosequi* order or any other court document showing Plaintiff's entitlement to release. Rather, Plaintiff's deliberate indifference allegations are based solely on her general oral complaints to Williams and Lynn, and her general written and oral complaints to Love. These allegations, at most, constitute negligence in failing to investigate Plaintiff's complaints, and is insufficient to state an over-detention claim under the Fourteenth Amendment. *See Tillman*, 496 F.3d at 1328; *Cannon*, 1 F.3d at 1562 ("Arresting officers and those responsible for maintaining custody of detainees are not constitutionally required 'to investigate independently every claim of innocence. . . .'") (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)); *White v. Thompson*, 299 Fed. Appx. 930, 934 (11th Cir. 2008) ("Although [Plaintiff] White testified he told [Defendant] Thompson that he was being illegally detained, no evidence showed he substantiated that complaint to Thompson. Thus, Thompson was, at most, negligent for not following up on White's oral complaint of illegal detention.").

Plaintiff's allegations have the added problem that they are unclear, which further

9

weakens her claim that Defendants were constitutionally obligated to investigate her general complaints of over-detention. Plaintiff's current allegations state that, from the moment of her incarceration on September 30, 2007, she protested to each Defendant that she was not supposed to be in jail because the charges forming the basis of her detention had been dismissed. Yet Plaintiff also alleges that the state court judge did not issue the order dismissing the charges forming the basis of her incarceration until December 11, 2007, over nine weeks after she started protesting about being unlawfully imprisoned. In light of the nine-week period of complaints that, according to Plaintiff's own allegations, had no legal substantiation, Defendants had no reason, particularly in the absence of a court order, to start investigating Plaintiff's complaints on December 11, 2007, when Plaintiff presumably was in fact entitled to release.

Thus, the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is due to be GRANTED as Plaintiff has failed to state a violation of the Fourteenth Amendment.

## C. Clearly Established Law

Even if Plaintiff has stated a claim for violation of the Fourteenth Amendment, Defendants would still be entitled to qualified immunity because the law is not clearly established so as to provide fair notice to Defendants that their actions were unlawful. It would not have been clear to the reasonable jailer that he or she must investigate a prisoner's general complaints of wrongful incarceration without any written record evidence from a court showing entitlement to release. To the contrary, *Tillman* teaches that merely receiving a plaintiff prisoner's release order and erroneously processing that order is insufficient to state a Fourteenth Amendment over-detention claim, even if the plaintiff makes general protests of the over-detention to the defendants. *Tillman*, 496 F.3d at 1327-28; *White*, 299 Fed. Appx. at 934. In

light of *Tillman*, a jailer who receives no court order that entitles a plaintiff to be released, but merely receives general complaints from the Plaintiff, does not have fair warning that failing to investigate the complaints constitutes unconstitutional conduct.

      The court recognizes that, in a broad sense, the law is clearly established in this Circuit that a law enforcement officer or jailer, who knows, or has reason to know, that an inmate is entitled to be released and simply refuses to do so violates the Fourteenth Amendment. *See Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1968)) (upholding liability under § 1983 against a jailer for continuing a prisoner's incarceration for nine months); *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980) (holding thirty day detention beyond the expiration of a sentence constitutes a due process violation); *Cannon v. Macon County*, 1 F.3d 1558, 1563-65 (11th Cir.1993) (denying qualified immunity defense and finding there was a clearly established right under the Fourteenth Amendment to not be falsely imprisoned based on *Douthit*); *McCurry v. Moore*, 242 F. Supp. 2d 1167 (N.D. Fla. 2002) (concluding that *Whirl*, *Douthit*, and *Cannon* clearly establish that a prison official must not be deliberately indifferent to a claim of unlawful imprisonment when the prisoner presents information which reasonably raises the issue). But these cases do not stand for the proposition that general complaints alone, without any substantiating documents from a court or other substantiating information, will trigger an affirmative duty to investigate the veracity of a plaintiff's claim that he or she is entitled to release. To the contrary, *Tillman* establishes that general complaints of wrongful incarceration are not enough. Thus, the court concludes that a jailer does not have reason to know about a wrongful incarceration based solely on a plaintiff's general protests that she is entitled to release, without any record evidence from a court or other information substantiating the claim.

The court is mindful of the procedural posture of this case – a Rule 12(b)(6) motion – and Plaintiff's claim that she does not know the facts necessary to allege a violation of the Fourteenth Amendment without the benefit of discovery.  But deliberate indifference is "a difficult burden for a plaintiff to meet," *Tillman*, 496 F.3d at 1327 (internal quotation marks and citation omitted), and the pleading standard for section 1983 individual capacity claims is heightened. *Epps v. Watson*, 492 F.3d 1240, 1242 (11th Cir. 2007).  Moreover, the affirmative defense of qualified immunity should be applied "at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only."  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir.2001) (en banc) (citations omitted);  *see also Epps*, 492 F.3d at 1243 (collecting Eleventh Circuit cases applying qualified immunity defense at Rule 12(b)(6) stage). Plaintiff has now filed three different complaints in this case, and has failed each time to allege facts showing Defendants were deliberately indifferent to her clearly established due process rights.  In light of the demanding substantive and procedural law in this area, as well as Plaintiff's multiple pleading opportunities, the court concludes that the Second Amended Complaint is due to be DISMISSED with prejudice.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

(1) Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #23) is GRANTED, and the Second Amended Complaint is DISMISSED with prejudice.

(2)  Defendants' request for an order awarding them costs and attorneys' fees pursuant to 42 U.S.C. § 1988 is DENIED.

DONE this 21st day of May, 2010

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE